G. C. WALKER ET AL. V. SALT FLAT WATER COMPANY.

No. 6667.   Decided July 15, 1936.
Rehearing overruled October 21, 1936.
(96 S. W., 2d Series, 231; 97 S. W., 2d Series, 460.)

*Kelso, Locke & King,* of San Antonio, and *Ben F. Cone,* of Luling, for plaintiff in error.

Where plaintiffs contended that their land had been damaged by the acts of defendant and defendant contended that plaintiffs were guilty of contributory negligence in not averting. the damage by themselves providing the proper drainage, and when the, evidence is such that reasonable minds differ as to the effect and as to the inferences and conclusions to be drawn therefrom on question of plaintiffs' contributory negligence, the question should be submitted to the jury and it is error for the court to instruct a verdict thereon. Lee v. International & G. N. Ry. Co., 89 Texas, 583, 36 S. W., 63; Texas & Pac. Ry. Co. v. Hill, 71 Texas, 451, 9 S. W., 351; Houston Elec. Co. v. McNutt, 11 S. W. (2d) 303; Hooks v. Orton, 30 S. W. (2d) 681; Houston & T. C. Ry. Co. v. Harris, 103 Texas, 422, 128 S. W., 897.

*Fred L. Blundell,* of Lockhart, and *K. W. Gilmore,* of Houston, for defendant in error.

Notwithstanding evidence may be conflicting on the negligence of the defendant and the amount of damages sustained by the plaintiff by reason thereof, where plaintiffs' evidence

established the fact that they knew the condition of the land and the damages that would occur if the land was permitted to remain as defendant has left it, in the event of a heavy rain, and that they could have prevented such damage at the expenditure of a few hours labor and a cost of not over $3.00, which defendant was willing to pay, it was the court's duty to instruct a verdict for the amount the evidence showed was necessary to prevent such damages. Southwestern Gas & Elec. Co. v. Stanley, 45 S. W. (2d) 671; Fort Worth & D. C. Ry. Co. v. Daggett, 87 Texas, 322, 28 S. W., 525; Gulf Pipe Line Co. v. Watson, 8 S. W. (2d) 957; Benson v. Abercrombie, 51 S. W. (2d) 431.

MR. JUSTICE CRITZ delivered the opinion of the court.

G. C. and W. P. Walker filed this suit in the District Court of Caldwell County, Texas, against Salt Flat Water Company, a corporation, to recover damages alleged to have resulted from a breach of contract by the Water Company. The case was tried before a jury in the district court, but at the conclusion of the testimony the court peremptorily instructed a verdict for the Water Company. The verdict was returned as directed and judgment entered accordingly. On appeal by the Walkers this judgment was affirmed by the Court of Civil Appeals. 64 S. W. (2d) 1015. The Walkers bring error. At this point we call attention to the fact that the opinion of the Court of Civil Appeals states that the peremptory instruction was given at the "conclusion of the appellants' testimony." This is a mistake. Both sides introduced evidence in the trial court, and the instruction was given at the close of all of the testimony. Under the view we take of this case, this becomes material, as will later appear.

We will not attempt to detail the pleadings of the Walkers to any great extent; it is sufficient to say that they sued the Water Company for damages alleged to have resulted from a breach of a written contract. It is alleged that the Water Company purchased from the Walkers a right of way across a certain tract of land in Caldwell County, Texas; that such contract conveyed to the Water Company the right to lay and maintain a water main across such land; that such contract obligated the Water Company "to pay any damages which may result from its acts and/or omissions in laying, changing or removing said pipe line"; that such contract also provided that the Water Company "further agrees to bury and maintain all pipe lines so as not to enterfere with the cultivation or drainage of

said land"; that the Water Company constructed such pipe line across this land so that when it filled up the trench in which the line was laid it left the earth banked or piled on top thereof, thus causing a large embankment or levee across said land; that on account of such embankment or levee rain or surface water was caused to be impounded and backed up on such land, thereby damaging and destroying the crops on the land on which the water was impounded, and that the water impounded, as above stated, broke through the above described embankment in several places and ran across this land, thereby causing deep washes and gullies, and thus permanently damaged and destroyed the value of such land.

We will not attempted to detail the pleadings of the Water Company. It is sufficient to say that we will assume, for the purposes of this opinion, that they are sufficient to raise the questions of law we shall decide.

As already stated, at the close of the evidence at the trial of this case in the district court, the court gave a peremptory charge for the Water Company. This action was sustained by the Court of Civil Appeals on the theory that the undisputed evidence showed that one Charles Conley, who was the Walkers' farm manager and general agent in charge of this land, knew its condition; knew how it lay; knew the condition in which it was left by the Water Company after the construction of the pipe line; knew for a month, or at least several days, before the damage occured, that if there should come a rain the water would be impounded behind the embankment; knew that he could have prevented any damage by two or three hours' labor at the small cost of $2 or $3; and failed to do anything to avoid such damages.

In connection with the above the Court of Civil Appeals announced the following rule of law:

"The rule has ever been in Texas that no recovery may be had for losses or damages, whether from tort or breach of contract, which might have been prevented, or the consequences avoided by reasonable efforts or expenditure by the person damaged."

We find no particular fault with the above rule, but since this suit is for damages alleged to have resulted from a breach of contract, we announce the rule as follows:

■■ Where a party is entitled to the benefits of a contract and can save himself from damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty

to incur such expense and make such exertions; and in such instances he can only charge the party in default with such damages as he could not have prevented with reasonable exertions and expense; but, where the party in default was in duty bound to prevent damages, and had equal opportunity with the person injured for performance, and equal knowledge of the consequences of nonperformance, he can not, while the contract is in force and effect, be heard to say that the plaintiff might have performed for him, and thus avoided such damages. 17 C. J., p. 771, par. 99, and authorities there cited.

When we come to examine the testimony of the witness Conley, we find he testified in substance and effect that he knew the condition of the land; knew the condition in which it was left by the appellee after the construction of the pipe line; for a month, or at least several days, knew that if there should come a rain water would be impounded behind the pipe line embankment; and knew that he could have prevented any damage by two or three hours' labor, and at a trivial expense of $2 or $3. This witness further testified in effect that he did not cut the embankment before this rain because he did not think he had the authority to do so, and did not figure it was his duty.

It appears that one W. H. Mead was placed on the stand as a witness for the Water Company. We will not attempt to detail this witness' testimony in full, but, among other things, he testified in substance that he lived at Luling, Texas, near this farm; that he was an expert civil engineer of many years actual experience; that he was a graduate of Yale University; that he was manger of the interests of this Water Company; that he constructed the pipe line across this land; that he had full charge of such construction; that in his opinion the construction as a whole was properly done in the customary manner; that the embankment he left did not interfere with the natural drainage; that proper openings were left to take care of drainage and to allow the water to run off.

■ Under the above record, we are of the opinion that a jury question was presented as to whether Conley was negligent in not doing the things necessary to prevent these damages; but certainly such record does not show that he was negligent as a matter of law. By this record, at best, the evidence reflects the opinions of the two men, Conley and Mead. Conley was of the opinion that the construction would result in damage if it should rain. Mead, an expert engineer, was of the opinion that

no damage would result, and that the construction was left in the best possible condition to protect the land from damage. Conley was of the opinion that there were not enough openings left in the embankment. Mead was of the opposite opinion. As shown by this record, Conley was simply a farmer, with the knowledge of the average farmer in regard to the matters here involved. Mead was an expert graduate engineer, with many years of experience in these matters. The Water Company had bound itself to indemnify the Walkers for damages such as these. Under such a record, we do not think it can be said as a matter of law that Conley was negligent in not pitting his lay knowledge and opinion against the expert knowledge and opinion of the graduate engineer, Mead.

■ We will not attempt to fully detail the evidence in this record which we think tends to show that Mead had equal opportunity with Conley to know the consequences of this construction, and an equal opportunity to avoid these damages. It is enough to say that the part of Mead's testimony already stated is amply sufficient in law to support a jury finding that he knew equally as well as Conley that it was liable to rain and what the consequences thereof might be. Also, the evidence is amply sufficient in law to support a jury finding that Mead had an equal opportunity with Conley to perform this contract and thus prevent these damages.

The judgments of the Court of Civil Appeals and of the district court are both reversed, and this cause is remanded to the district court for a new trial.

Opinion delivered July 15, 1936.

### ON MOTION FOR REHEARING.

This case is before us on motion for rehearing filed by the Salt Flat Water Company, defendant in error.

In our original opinion we stated that the trial court peremptorily instructed a verdict for the Salt Flat Water Company. This statement is not absolutely correct. At the close of the testimony the court instructed a verdict for the plaintiff for nominal damages, in the sum of $3.00. This mistake is immaterial.

The motion for rehearing has been carefully considered, and is overruled.

Opinion delivered October 21, 1936.