NAUTILUS TRAINING CENTER NO. 2, INC., et al., Appellants,

v.

SEAFIRST LEASING CORPORATION, Appellee.

No. 2350 CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 9, 1982.

Timothy A. Beeton, Nancy S. Polis, Foreman & Dyess, Houston, for appellants.

Joe M. Kirkham, Gary C. Miller, Wood, Campbell, Moody & Gibbs, Houston, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

Seafirst Leasing Corporation brought this action against Nautilus Training Center of Houston, No. 2, Inc., and its two executive officers for breach of contract. The trial court granted Seafirst's motion for summary judgment. Nautilus and its president, L.H. Glover, appeal from this judgment. We reverse.

The circumstances which gave rise to this case are as follows: In July of 1978, Nautilus entered into an agreement with Seafirst which was styled "Equipment Lease and Request to Purchase." This equipment lease provided that Seafirst would purchase a computer at a total cost of $59,101.50 and send it to Nautilus. Nautilus would pay all taxes, insurance, and make monthly payments to Seafirst for sixty months. Nonpayment of rent continuing more than ten days after the due date is defined as an event of default by the lease. Upon occurrence of a default, Seafirst was authorized to repossess the equipment and recover past-due payments in addition to a sum representing all payments for the remainder of the lease, reduced by the fair rental value for the period. Nautilus was also obligated to pay interest on accrued payments as well as collection, court costs and attorney's fees.

Soon after the execution of the lease, L.H. Glover and Demaree Jones, the president and vice-president of Nautilus, entered into a Guaranty and Purchase Agreement with Seafirst in which they promised to perform all of the obligations of Nautilus under the lease. The Guaranty and Purchase Agreement established the following rights and remedies upon default by Nautilus:

"In the event of the termination of any Equipment Lease howsoever occurring, each of the undersigned agrees, at the option and upon demand of Lessor, its successors and assigns, if the Lessee is then in default, to purchase from Lessor, its successors and assigns, the leased equipment with respect to which Lessee is in default and Lessor's rights against Lessee, and against any guarantors, insurors and other persons against whom Lessor may have rights or claims, in connection with said equipment or said rights against Lessee, at a price equal to the greater of (a) the reasonable market value of such equipment or (b) the balance of rent accrued and to accrue over the unexpired portion of the term of the

Equipment Lease, together with interest on the accrued and unpaid portion of such rental and all collection expenses and other charges owing under such Lease. Such purchase shall be of the equipment as is, where is and without warranty, express or implied, as to quality, condition, fitness for known purpose, or of any other kind. If lessor is not in possession of any such equipment, it shall have no obligation to locate, take possession of, or deliver the same to purchaser, and purchaser shall rely exclusively upon its own resources to locate and obtain possession thereof, or damages for detention or destruction thereof, or damage thereto, all without regard to the expense thereof or to the existence of storage or other liens, or other adverse claims, excepting only defects in Lessor's title, unless made or suffered by Lessee. The purchaser shall pay any and all applicable sales and use taxes. In the event such equipment is lost, stolen or in damaged condition, purchaser shall be entitled to an assignment of any claims for insurance and against Lessee and other persons which Lessor, its successors and assigns, might make in connection therewith."

Seafirst brought this suit against Nautilus, Glover and Jones for breach of the Lease and Guaranty and Purchase Agreement. In its petition, Seafirst alleged that Nautilus had failed to make its monthly payments although requested to do so. Seafirst further alleged that the appellants were indebted to it in the amount of $65,-109.12, but were entitled to an offset of $5,000.00 because Seafirst had sold the equipment to a third party for that amount. The appellee also asked for costs and attorney's fees. In their answer, the appellants raised no defense to their liability. Thereafter, Seafirst filed a Motion for Summary Judgment[1] supported by the affidavit of its credit manager, John Nelson. The affidavit recited that, although Seafirst had performed fully, Nautilus had failed to pay since August 21, 1979, and that Glover and Jones had also failed to pay. Nelson stated that after a great deal of difficulty in attempting to sell or lease the computer, Seafirst sold it for $5,000.00. In response, L. Hal Glover described the condition of the equipment at the time of repossession as excellent. He claimed that the value of the equipment was far in excess of $5,000.00, and stated that authorized representatives of Seafirst had admitted as much to him.

The trial court granted the motion for summary judgment, awarding damages of $60,109.12, together with costs, attorneys fees and interest. Appellants contend here that the amount of damages is a genuine issue of material fact because of the question of mitigation and that the proof was insufficient to authorize recovery. We agree.

If there is any genuine issue of material fact, a motion for summary judg-

---

1. Paragraphs of the motion for summary judgment pertinent to this appeal appear below:

"Under the terms of the Agreements, the Defendants are thus indebted to the Plaintiff in the amount of $65,109.12 with each Defendant individually liable for the entire amount owed. This damage figure is derived directly from the remedies provisions contained in the Guaranty and Purchase Agreement, and calculated as follows:

| | |
|---|---|
| Rent accrued from September, 1979, through October 31, 1980 | |
| 15 payments of $1,245.92, with 12% interest thereon: | $20,256.00 |
| Add: Balance of rent to accrue over remaining term of lease. | |
| 36 payments of $1,245.92 | $44,853.12 |
| Total amount due under liquidated damages provisions of Guaranty and Purchase Agreement: | $65,109.12 |

8.

After long and diligent efforts directed toward mitigating the damages resulting from Defendants' willful breach of contract, Plaintiff sold the computing equipment that is the subject of this lawsuit that being the highest offer made for the equipment over a period of almost one year, despite Plaintiff's diligent efforts to obtain higher offers. Defendants are thus entitled to an offset against damages of $5,000.00, and as a result are indebted to Plaintiff under the Agreements in the amount of $60,109.12.

9.

Plaintiff also is entitled to and seeks to recover its expenses incurred in collection and repossession of the debt and equipment involved in this case, as provided in the Agreements. To date those expenses total $511.00."

ment must be denied. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). The evidence must be viewed in the light most favorable to the non-movant, and all doubts as to the existence of a material fact are to be resolved against the movant. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). This standard applies because the purpose of summary judgments is to eliminate patently unmeritorious claims or untenable defenses. *In re Prices' Estate*, 375 S.W.2d 900, 904 (Tex.1964). The movant must conclusively prove all the essential elements of his claim to be entitled to a summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). Thus, a non-movant need not respond to a motion for summary judgment in order to urge on appeal that the movant's proof is insufficient as a matter of law to establish the specific grounds relied upon by the movant. *Fantastic Homes, Inc. v. Combs*, 596 S.W.2d 502 (Tex. 1979). Pleadings, even if sworn, are not summary judgment evidence. *Hidalgo v. Surety Savings & Loan Assoc.*, 462 S.W.2d 540, 545 (Tex.1971).

 The amount of damages in general, and more specifically the issue of whether a party under a duty to mitigate has in fact done so, is usually a question of fact for the fact finder. *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 233 (Tex.1936). Therefore, summary judgments are not ordinarily concerned with the amount of damages. *Carruth v. Allen*, 368 S.W.2d 672, 680 (Tex.Civ.App.—Austin 1963, no writ). When there exists a valid liquidated damages clause in a contract, the courts will enforce it, and in doing so, need not consider the issue of mitigation. *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437, 439 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). The stipulation by the parties to a definite or readily calculable sum as damages would provide the answer to the fact finder on the damage question. Thus, it is conceivable that it would be proper to enter a summary judgment awarding damages in accordance with the parties' agreement.

 Appellee contends that its award resulted from the enforcement of the remedies clause of the Guaranty and Purchase Agreement, which they characterize as a liquidated damages clause.[2] Although the amount by which an award is reduced through mitigation need not be deducted from liquidated damages, it was done here. The deduction of $5,000.00 as an offset raised issues of fact of necessity to mitigate and of reasonableness of the amount. These issues of fact made the appellee's summary judgment proof legally insufficient.

The judgment of the trial court is reversed and the cause is remanded.

2. We express no opinion on the interpretation of this clause or its validity.