Robert BLACK, Appellant,

v.

DELTA AIRLINES, INC., Al Perez, and Abe Haddad d/b/a Smith Travel & Limousine, Appellees.

No. 10–00–156–CV.

Court of Appeals of Texas, Waco.

Jan. 30, 2002.

---

Ronald E. Harden, Dorothy Harden, Harden Law Firm, L.L.P., Terrell, for appellant.

Jimmy C. Bailey, Jimmy C. Bailey & Associates, P.C., Dallas, Dan K. Horn, John M. Weaver, Maloney, Bean & Horn, P.C., Irving, for appellees.

Before Justice VANCE, Justice GRAY, and Justice RICHARDS (Sitting by Assignment).

## OPINION

DAVID L. RICHARDS, Justice (Assigned).

This is an appeal from two take nothing summary judgment orders entered against Robert Black ["Black"], a Dallas resident, in connection with his suit for damages arising from a planned airline flight to Las Vegas from Dallas/Fort Worth International Airport. The summary judgment motions were filed pursuant to TEX. R. CIV. P. 166a(b). Delta Airlines, Inc. ["Delta"], Al Perez ["Perez"], and Abe Haddad d/b/a Smith Travel & Limousine ["Smith Travel"] were defendants in the court below. We will reverse the district court's summary judgment orders and remand the case for trial.

### I. Factual Background

On June 23, 1995, Black purchased two airline tickets for seats on Delta Airlines for an afternoon flight to Las Vegas, Nevada. According to Black, he intended the trip to be a surprise present for his wife, Mary. Black hoped that the trip would help repair his damaged marriage and, to that end, he attempted to ensure a romantic weekend by arranging for, among other things, first-class airline seats, a leisurely dinner, and tickets to a Tom Jones concert on the evening of their arrival. Viewed in

the light most favorable to Black, the non-movant in the district court, the record reflects the following events:

Black purchased the airline tickets on June 23, 1995 from Smith Travel, a Dallas travel agency. The cost for the two, round-trip, first-class tickets was $2,384, an amount Black charged on a credit card. The written invoices appellant received from Smith Travel reflected two first-class reservations on Delta Airlines Flight 661 to Las Vegas, scheduled to depart that same day, June 23, at 3:18 p.m. The invoices also reflected the details of a scheduled return flight to Dallas on June 25. Close inspection of the invoices shows seat assignments for "Robert Black" for both directions, however, Mary Black's invoice reflects a seat assignment only for the return flight. Nevertheless, her invoice reflects first-class reservations both directions. According to Black, Melissa Shinn, the manager of Smith Travel, personally represented to him that both tickets were confirmed for first-class travel. Two round-trip tickets accompanied the itinerary/invoices. Each ticket indicates, "Issued by DELTA AIRLINES INC," and reflects first-class travel for each of the Blacks on flight 661 to Las Vegas, and flight 1800 on the return trip.

The Blacks arrived at the gate prior to departure and informed the gate agent that they desired to sit together. The agent said, "I'll see what I can do." As the plane boarded, a Delta supervisor, Al Perez, appeared and told the Blacks that there was a problem with their reservations and that one of the tickets was, in fact, not confirmed for first-class travel. According to Delta, Black's ticket was confirmed for first-class, but the ticket for Mary was merely a confirmed ticket for a seat in coach, which had been placed on a "priority wait list for first-class." Because first-class was completely filled, Mary would have to fly in coach. Perez spoke on the phone to Shinn, then told the Blacks that Shinn's computer indicated that the tickets were confirmed for first-class. Perez told them that Delta's computer indicated Mary's ticket was not confirmed. The Blacks presented summary judgment evidence that this situation is routinely encountered by Delta and that hundreds of times passengers arrive at the gate with confirmed tickets that are somehow not reflected in the SABRE reservation system used by Delta. In response to the Blacks plight, several alternatives were offered by Perez: the Blacks could sit together in coach; fly separately, one in coach, one in first-class; or take a later flight. Black presented evidence that the offered alternatives were unacceptable given the purpose of the trip: a first-class romantic flight, and the tight schedule for attending already paid-for functions in Las Vegas, including the Tom Jones concert that evening.

After rejecting Delta's proposed alternatives Black made other flight arrangements. At a cost of $13,150, Black hired a private air carrier to transport them to Las Vegas.

## II. Procedural Background

Black sued Delta under theories of breach of contract, intentional misrepresentation, and negligent misrepresentation. He sued Haddad, in his capacity as owner of Smith Travel, under theories of breach of contract, intentional misrepresentation, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act,[1] and negligence. Black sued Perez, the Delta flight supervisor, for intentional mis-

1. *See* TEX. BUS. & COM. CODE ANN. § 17.45 (Vernon Supp.2001).

representation and negligent misrepresentation.[2]

Delta and Perez moved for summary judgment on four grounds: (1) preemption under the Airline Deregulation Act of 1978 ["ADA"];[3] (2) lack of causation; (3) avoidable consequences; and (4) Smith Travel's lack of an agency relationship with Delta. That motion for summary was granted. Haddad moved for summary judgment on similar grounds, save for the agency claim. In addition, Haddad alleged that summary judgment was proper because he was not the owner of Smith Travel at the time Black purchased the tickets. His motion for summary judgment was also granted.

## III.  Discussion

### A.  Standard of review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678. Where, as here, the trial court grants summary judgment in a general order without specifying the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### B.  Preemption Analysis

We begin by considering whether the ADA prevents Black from advancing his causes of action in state court. Under the supremacy clause of the United States Constitution, federal law may preempt state law either by express provision, by implication, or by a conflict between federal and state law. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 653–55, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995), *see also* U.S. CONST. ART. VI. The manifest intent of the ADA's preemption provision is to "ensure that the States would not undo federal deregulation with regulation of their own." *American Air-*

---

**2.**  Other parties originally included in the suit were either non-suited by Black or had default judgments entered against them.

**3.**  *See* 49 U.S.C. § 1305 (1994).

lines v. Wolens, 513 U.S. 219, 222, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. at 378, 112 S.Ct. at 2034, 119 L.Ed.2d 157 (1992)); see also Legend Airlines, Inc. v. City of Fort Worth, 23 S.W.3d 83 (Tex.App.-Fort Worth 2000, pet. denied). The ADA prohibits States from "enact[ing] or enforc[ing] any law ... relating to [air carrier] rates, routes, or services." 49 U.S.C. § 40101, et seq. (1995).[4] This language has been interpreted by the United States Supreme Court as preempting, and thus barring, state-imposed regulations of air carriers. American Airlines, Inc. v. Wolens, 513 U.S. at 222, 115 S.Ct. 817. Claims for breach of contract,[5] however, do not constitute "state imposed regulations," where parties seek redress in state court for the violation of contract terms set by the parties themselves. Id. at 232, 115 S.Ct. 817. The specific issues addressed in Wolens involved claims brought in Illinois state court alleging that American Airlines' action in changing mileage credits in its frequent flier program for credits passengers had already accumulated, constituted a breach of contract and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), 815 Ill. Comp. Stat. Sec 505/1 et seq. (1992). Id. at 224, 115 S.Ct. 817.

Because the Illinois Consumer Fraud Act controlled the primary conduct of those parties falling within its governance, the United States Supreme Court held that the Illinois statute might be used as a means to guide and police the marketing practices of airlines. Id. at 232, 115 S.Ct. 817. Noting that the purpose of the Airline Deregulation Act was to prohibit the states from controlling the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, the Supreme Court held the ADA preempted the plaintiff's claims under the Illinois Consumer Fraud Act. Id. at 228–232, 115 S.Ct. 817.[6]

---

**4.** The Federal Aviation Act cited by the parties was repealed, revised, and recodified in July 1994, prior to the date Black purchased his tickets. Congress enacted 49 U.S.C. § 40101, et seq (1995), which replaced section 1305 without substantive change. The new law includes section 41713 entitled "Preemption of authority over prices, routes, and services," intended to replace section 1305. The revised section contains only a few minor changes in the language, but the substance is left intact. Section 41713(b)(1) in part provides: "a State ... may not enact or enforce a law ... having the force and effect of law related to price, route, service of an air carrier ..." This is substantially the same as the old section 1305 cited by the parties. The legislative history indicates that the "purpose of [the revision] is to restate in comprehensive form, without substantive change, certain general and permanent laws related to transportation and ...to make other technical improvements in the Code." H.R.Rep. No. 180, 103rd Cong., 2nd Sess. 1 (1993) reprinted in 1994 U.S.Code Cong. and Admin. News at 818.

**5.** A claim for a breach of contract requires proof that (1) a binding contract existed; (2) defendants breached the contract; (3) plaintiffs suffered damages caused by the defendant's alleged breach. East Tex. Med. Center Cancer Inst. v. Anderson, 991 S.W.2d 55, 62 (Tex.App.-Tyler 1998, pet. denied); Ryan v. Superior Oil Co., 813 S.W.2d 594, 596 (Tex. App.-Houston [14th Dist.] 1991, writ denied).

**6.** In Morales, the high court held the ADA precluded state attorneys general from seeking to compel air carriers to comply with guidelines adopted by the National Association of Attorneys General. Morales, 504 U.S. at 383–90, 112 S.Ct. at 2036–40. American Airlines v. Wolens stands for the proposition that the ADA does not preclude state courts from entertaining certain common law tort and contract actions based on the actions of air carriers. See American Airlines v. Wolens, 513 U.S. at 232–34, 115 S.Ct. at 826.

Using those benchmark cases as guides, reviewing courts of this state have carefully examined the nature of the plaintiff's cause of action in order to determine whether the

A different result was reached by the high court on the question of whether breach of contract claims are preempted. Reasoning that the Airline Deregulation Act was not intended to regulate contracts between individual parties, the court held it would not read the preemption clause, 49 U.S.C.S. § 1305(a)(1), to "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings," and ruled breach of contract causes of action were not subject to federal preemption. *Id.* at 229, 115 S.Ct. at 824. The Supreme Court clarified its ruling by noting the disparate treatment of statutory causes of action as opposed to those arising out of contractual agreements:

> This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 233, 115 S.Ct. 817 (footnote omitted).

A rote application of the ruling in *Wolens* would require us to hold that Black's breach of contract claim against Delta is permissible because it involves alleged violations of "the parties bargain," rather than state laws external to the agreement. Nevertheless, we cannot overlook the fact that the alleged contractual violation at issue in this appeal involves a common condition unique to the airline industry-the failure to seat an allegedly confirmed ticket holder because of overbooking-and that unlike the frequent-flier agreements at issue in *Wolens,* specific federal regulations govern compensation for air passengers who are involuntarily prevented from boarding a flight due to overbooking. *See* 14 C.F.R. §§ 250.4, 250.5, 250.6 (1984).

In other contexts, the Supreme Court has held that when the statute is silent or ambiguous courts should turn to agency regulations for clarification. *West v. Northwest Airlines, Inc.,* 995 F.2d 148, 151 (9th Cir.1993). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to provide a specific provision of the statute by regulation. Federal regulations provide for compensation for passengers whose confirmed reservations are not honored, without requiring that the passenger prove economic damages or physical injury. 14 C.F.R. §§ 250.4, 250.5, 250.6 (1984). The regulations provide for a maximum compensation of $400, which is halved if the carrier provides alternate transportation that is planned to arrive at the passenger's next destination within a designated time of the arrival time of the original flight from which the passenger is bumped for flights within the United States and its territories. Significantly, 14 C.F.R. § 250.2a states that the policy be-

claim is preempted by the ADA. *See Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 284 (Tex.1996) (claims for simple negligence held not preempted by the ADA); *The Boon Insurance Agency, Inc. v. American Airlines, Inc.,* 17 S.W.3d 52 (Tex.App.-Austin 2000) cert. denied 148 L.Ed.2d 772, 121 S.Ct. 858, 148 L.Ed.2d 772 (2000) (class-action suit challenging penalties imposed by the airline when the holder of an economy-class ticket fails to travel according to the ticket's original terms, held barred by preemption doctrine because claim sought to modify terms of the

contract by relying on state law); *Legend Airlines, Inc. v. City of Fort Worth,* 23 S.W.3d 83 (Tex.App.-Fort Worth 2000, pet. denied) (enforcement of bond ordinance restrictions to prevent long-haul air service at Dallas Love Field held preempted by the ADA); *Shupe v. American Airlines Airlines, Inc.* 893 S.W.2d 305 (Tex.App.-Fort Worth 1995), aff'd 920 S.W.2d 274 (Tex.1996) (breach of contract cause of action for failure to comply with agreement to provide a "meet and assist" service at airport terminal gate held not preempted).

hind its creation is to ensure that every air carrier ensure that the smallest practicable number of persons holding confirmed reserved space on flights are denied boarding involuntarily. The regulations provide a uniform system of compensation that may be enforced by the ticket holders, or declined by the ticket holders, at their discretion, in favor of damages to be decided "in a court of law or in some other manner." *See* 14 C.F.R. § 250.9(b) (1984). By Black's own admission Delta attempted to placate him with alternatives, but none were acceptable.

As noted above the regulations provide that the *"bumped passenger has the right to decline the compensation provided for in the regulation and seek to recover damages in a court of law." See* 14 C.F.R § 250.10 (1984) (Emphasis added). Delta argues Black was not bumped because she was offered $60 compensation for sitting in the flight's coach cabin, rather than in the first class cabin. According to Delta, all other remedies are preempted because § 250.6, provides that, among other exceptions to eligibility for "denied boarding compensation," are passengers ". . . seated in a section for which a lower fare is charged shall be entitled to an appropriate refund." Black produced summary judgment evidence showing she held a confirmed, first-class ticket. Delta produced summary judgment evidence showing the ticket was confirmed only for coach. As noted above, settled summary judgment law requires us to construe the evidence in the light most favorable to Black, the nonmovant. Under this standard, we assume that Black was denied her "confirmed reserved space"[7] on Flight

661 due to airline overbooking. Addressing Delta's claim that Black was entitled to only $60 because she was offered seating in coach, we note that 14 C.F.R. § 250.6 does not specifically preempt Black's claim. It merely lists Black's situation (denied first class boarding with an offer for coach boarding) as an "exception" to "eligibility for denied boarding compensation." We therefore agree with Delta's contention that, because Mary was offered coach seating, Black would not be entitled to demand the federally required damages available to "bumped" passengers choosing compensation under the regulations of "200 percent of the sum of the values of the passenger's remaining flight coupons up to the passenger's next stopover, or if none, to the passenger's final destination, with a maximum of $400." 14 C.F.R. § 250.5. However, to say the Black cannot claim damages outside the regulation's compensation system would be incorrect. In fact, nothing in the code of federal regulations bars anyone from foregoing regulation remedies and seeking damages in state court. 14 C.F.R. § 250.9 (1984) requires the airlines to inform passengers paid compensation that "[a]cceptance of the compensation may relieve (name of air carrier) from any further liability to the passenger caused by its failure to honor the confirmed reservation. *However, the passenger may decline the payment and seek to recover damages in a court of law or in some other manner."* (Emphasis added). Because federal airline regulations allow passengers whose airline reservations are not honored due to overbooking to seek recovery for damages "in a court of law or in some other manner," we hold that Black's breach of contract cause

---

7. *See* 14 C.F.R. § 250.1 (1983). " '*Confirmed reserved space* ', means space on a specific date and on a specific flight and class of service of a carrier which has been requested by a passenger and which the carrier or its agent has verified, by appropriate notation on the ticket or in any other manner provided therefor by the carrier, as being reserved for the accommodation of the passenger."

of action against Delta is not preempted by the ADA. Moreover, even if Delta were correct in its contention that passengers in Black's situation can recover only an "appropriate refund" for involuntary seating in coach while holding a reserved, first class ticket, Delta has not shown that the $60 tendered to Black was "appropriate."

Federal regulations provide that a person offered accommodations in a section of the aircraft other than as specified on their ticket gives up his or her right to compensation under scheme available in the regulations, but no such waiver is stated for persons who choose the "passenger option" of "recovering damages in a court of law." *See* 14 C.F.R. § 250.9 (1984). We additionally note that Black contends no Delta employee requested other first-class passengers holding reservations to volunteer for a payment of Delta's choosing in return for sitting in coach. If Mary's ticket was confirmed for first-class and Delta did not request volunteers from other ticketed passengers to give up their seat assignment in exchange for an airline incentive, Delta itself was in violation of the very federal regulations it contends foreclose Black from recovering in a court of law. 14 C.F.R. § 250.9 (1984) provides:

Written explanation of denied boarding compensation and boarding priorities.

(a) Every carrier shall furnish passengers who are denied boarding involuntarily from flights on which they hold confirmed reserved space immediately after they are denied boarding occurs, a written statement explaining the terms, conditions, and limitations of denied boarding compensation. . . .

(b) The statement shall read as follows:

. . .

If a flight is oversold (more passengers hold confirmed reservations than there are seats available), no one may be denied boarding against his or her will until airline personnel first ask for volunteers who will give up their reservation willingly, in exchange for a payment of the airline's choosing. If there are not enough volunteers, other passengers may be denied boarding involuntarily in accordance with the following boarding priority of (name of air carrier): (In this space carrier inserts its boarding priority rules or a summary thereof, in a manner to be understandable to the average passenger).

To be sure, Delta offered summary judgment evidence that Al Perez *did* seek volunteers from other first-class passengers and that, in fact, he offered the generous incentive of an additional round-trip ticket to anywhere in the United States to any first-class passenger who would give up their seat to Mary and agree to fly on the same flight in coach. According to Perez, only after no passenger volunteered did he deny Mary first-class seating. However, other evidence suggested that was not true. Every reasonable inference must be indulged in favor of the non-movant and every doubts resolved in its favor. *See, e.g., Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Black offered summary judgment evidence that he and his wife arrived at the departure gate between one hour and forty-five minutes in advance of boarding, that he did not witness Perez seeking volunteers from the other first-class passengers, and that, in fact, the flight was already in the process of boarding when Mary was first informed that her reservation for first-class would not be honored. Significantly, Black also averred that Perez did not appear at the gate until the gate agents were in the process of boarding passengers for the flight. It is reasonable to infer that if Perez had asked every first-

class passenger to volunteer to give up their ticket, he would have done so over the gate public address system. Because Black was present when Perez arrived at the gate and did not witness Perez make any offer seeking volunteers from the other first-class passengers, in viewing the evidence in the light favorable to Black, a reasonable inference is that Delta did not seek volunteers before denying Mary first-class seating.

Whether Black's claims against Delta for intentional and negligent misrepresentation [8] are preempted by the ADA presents a closer question. In both *Morales* and *Wolens*, the United State's Supreme Court held that causes of action based on state consumer protection statutes are preempted under the ADA. The Texas Supreme Court accurately predicted in *Continental Airlines v. Kiefer* that this very question would one day be presented to a reviewing court:

> An action for negligent misrepresentation might be argued to be indistinguishable from the statutory consumer protection actions [held preempted] in *Morales and Wolens*. Strict products liability could be argued to embody State policies to a degree prohibited by ADA regulation policy. These are but two examples. *We need not address these issues here but leave them for "a closer working out" in future cases.* We hold only that the ADA does not preempt common-law personal injury cases negligence claims against air carriers, subject to the reservations we have expressed as to damages.

*Continental Airlines v. Kiefer,* 920 S.W.2d 274, 283 (Tex.1996).

We now proceed to the "closer working out," anticipated in *Kiefer.* We begin by noting that while Black seeks relief under the Texas consumer protection law corollary to the state laws held preempted by the ADA in *Morales* and *Wolens*-the Texas Deceptive Trade Practices Act [9]-he does so only in relation to his claims against Haddad, the owner of the travel agency. A claim against Delta for alleged violations of the Deceptive Trade Practices Act would be preempted by the ADA, in order to prevent our state legislature from controlling, through consumer protection acts, "the design and implementation of marketing mechanisms appropriate to the furnishing of air transportation services." *See American Airlines v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); *See also Shupe v. American Airlines, Inc.,* 893 S.W.2d 305, 307–308 (Tex.App.-Fort Worth 1995), affirmed 920 S.W.2d 274. However, the theories of intentional and negligent misrepresentation actually pleaded by Black do not turn on any requirement imposed on Delta by any Texas legislative body. Instead they turn on representations alleged by Black to have been personally made to him by Delta through Perez, and Delta's alleged agent, Haddad. This makes the misrepresentation causes of action more similar to the breach of contract claims historically held not to be preempted by the ADA, than the consumer protection act causes of action determined by courts to be preempted, because the misrepresentation claims involve actions between the parties in connection with "self-imposed undertakings," a factor deemed significant by the Supreme Court in *Wolens.* cite. For this reason, we hold that Black's causes of action against Delta for inten-

---

8. We here address only the issue of preemption. Whether the facts could support a claim under either of these theories was not presented to the trial court.

9. TEX. BUS. & COM. CODE ANN. § 17.46 (Vernon Supp.2001).

tional and negligent misrepresentation are not preempted by the ADA.

Because Delta flight supervisor Al Perez's summary judgment claims are based on the same grounds advanced by Delta, including the preemption claims, we find that Black's causes of action against Perez for intentional and negligent misrepresentation are also not preempted by the ADA. Our disposition of the preemption issue against Delta and Perez is similar, except that we must also determine whether travel agencies are covered under the ADA.

Haddad maintains that as a travel agency marketing airline tickets, Black's cause of action against his business for alleged violations of the Texas Deceptive Trade Practices Act is preempted by the ADA for the same reason such a cause of action would not be permitted against an airline.[10] Haddad specifically argues that the ADA preempts claims, "directly related to services provided by an air carrier and those that make reservations for service for an air carrier." We disagree. The ADA provides that no state "shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of *any air carrier*." 49 U.S.C. § 41713(b)(1) (1994) (emphasis added). The burden of demonstrating preemption is on the party who asserts it. *See Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 255, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Haddad has not demonstrated on appeal, nor in the court below, a congressional intent to shield travel agencies from state consumer protection laws through the ADA. We agree with Black's assertion that his claims against Haddad involve privately-ordered undertakings

that affect the airlines, if at all, in too tenuous, remote, or peripheral a manner to have preemptive effect. *See Morales v. Trans World Airlines*, 504 U.S. at 390, 112 S.Ct. 2031. We therefore hold that Black's causes of action against Haddad, including the claimed violation of the Texas Deceptive Trade Practices Act, are not preempted by the ADA.

## C. Causation

Summary judgment was also sought on grounds that the damages Black suffered were not caused by any wrongdoing on the part of any appellee. The specific argument made by Delta, Perez, and Haddad in their summary judgment motion in the district court follows:

> The undisputed evidence shows that plaintiff and his wife could have traveled on flight 661, with one passenger in first-class and the other in coach. Even if Mrs. Black was wrongfully denied a seat in first-class, the ultimate result of that alleged wrongdoing is that Mrs. Black would sit in coach for the 2½ hour flight, just like 185 other passengers on this particular Boeing 767. Because the Blacks were not denied transportation on flight 661, alternate flight arrangements were not necessary.... At most, the Blacks would have suffered "mental anguish" from the moral, social, or marital humiliation of travel in coach rather than first-class. As the Blacks are probably aware, of course, such a claim would not have a significant legal value.

Put another way, the movants contend that the Blacks were, as a matter of law, required to fly on Flight 661 to avoid having their claim dismissed on grounds of causation. We do not agree. Although the

---

10. Haddad took no position in his summary judgment motion on the question of whether he was acting as an agent of Delta in issuing the tickets to Black. We therefore are not presented with (and do not address) whether Haddad is entitled to protection from Black's deceptive trade practices cause of action if Haddad is proven to be Delta's agent.

economic damages allegedly suffered by Black when he chartered a private jet to fly him to Las Vegas to ensure his arrival for dinner and the Tom Jones concert were substantial, we cannot say, as a matter of law, that a rational jury could not find that Black suffered at least some damage as a result of the appellee's conduct. "[T]he question of causation (foreseeability) which controls liability should be determined from the facts and circumstances of each particular case, and except where reasonable minds cannot differ, the issue is one for the jury." *Strakos v. Gehring*, 360 S.W.2d 787, 792 (Tex.1962). We hold that there is at least some evidence that the allegedly improper conduct of the defendants caused Black damages.

### D. Avoidable Consequences

■ Delta, Perez and Haddad, contend that Black could have avoided the damages he allegedly suffered if he had mitigated his damages through other available travel alternatives. As a general rule, whether a party has mitigated his damages is a question of fact reserved to the fact finder at trial. *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 233 (Tex. 1936). Black presented evidence that he could not take a later Delta flight to Las Vegas because his already scheduled post-arrival plans, including pre-purchased tickets to the Tom Jones concert, would not permit a later arrival. He also presented evidence that sitting in coach would conflict with the reason for the trip: a demonstration, through first-class accommodations, of his love for his wife and a desire to strengthen his weakening marriage. Whether Black could have avoided the ex-

pense of a privately chartered jet is an issue we believe is best left to the trier of fact. Appellate courts are particularly ill-equipped to determine, as a matter of law, whether particular actions undertaken to advance interests in "affairs of the heart," such as Black's stated motivation here, are reasonable. Such issues are better left to the trier of fact to resolve. We therefore hold that summary judgment in favor of appellees is not proper under the theory of "avoidable consequences."

### E. Agency

■ Delta and Perez contend that summary judgment was appropriate because Smith Travel was, as a matter of law, not acting as their agent at the time Black purchased his tickets. In other words, Delta and Perez claim that they were not parties to the travel contract made between Black and Smith Travel. We hold that like the issues of causation and avoidable consequences, the agency question presented in this case cannot be resolved as a matter of law.

■ Delta and Perez moved for summary judgment under this defensive theory based solely on the affidavit of Linda Wilson, a Reservation Sales Supervisor for Delta. In her affidavit, Wilson averred she has been employed in Delta's reservation department for twenty-nine years and that Smith Travel, "like all U.S. travel agencies," is authorized by a separate corporation, the Airline Reporting Corporation ("ARC"), to issue tickets on airlines, but that it does not act as an agent for Delta.[11] She also avers that the

---

11. An agent is one who consents to act on behalf of, and subject to, the control of the principal, who has manifested consent that the agent so act. *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 493 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Each side tendered summary judgment affida-

vits which purported to establish whether Haddad was Delta's agent. To the extent that each respective affidavit, in addition to providing facts pertinent to that issue, addressed the ultimate question of whether an agency relationship existed, the affidavits were improper. *See Watkins v. Hammerman & Gain-*

ARC does not authorize travel agents to confirm or accept a reservation on an airline flight and that when requesting reservations on Delta travel agents act exclusively on behalf of the passenger. In response to Wilson's affidavit, Black presented the affidavit of James Hargis, a former Delta passenger service agent with twenty five years' experience. In connection with the question of agency, Hargis directly contradicted Wilson and stated that "when a travel agent issues a ticket, the travel agent acts on behalf of the air carrier, which in this case is Delta." The written disclaimer on the travel documents Black received from the travel agency at the time of ticketing similarly states that Smith Travel & Limousine is acting as an agent for Delta. Under these disputed facts we hold that Delta and Perez have not established, as a matter of law, that Smith Travel & Limousine was not acting as Delta's agent.

## F. Ownership of Smith Travel & Limousine

█ Haddad moved for summary judgment on the additional ground that he was not the owner of Smith Travel & Limousine on June 23, 1995. In support of that claim, Haddad signed an affidavit in which he averred that on April 1, 1995, he sold Smith Travel & Limousine to a corporation, Around the Glop, Inc. A written purchase agreement documenting the sale was attached to his affidavit. In response, Black produced a certified record from the Dallas County Clerk's Office certifying Abe Haddad began doing business as "Smith Travel & Limousine," on June 10, 1991, and that he was still on record in that same capacity as of August 22, 1997. Black also tendered an affidavit certified by the office of the Texas Secretary of State indicating that there was no record of entry indicating any assumed names certificates on file for the corporation known as Around the Glop, Inc. We hold that because of this conflicting evidence, that it was not established, as a matter of law, that Abe Haddad was not doing business as Smith Travel & Limousine on the date Black purchased his airline tickets.

Having determined that summary judgment was not proper on any of the grounds advanced by appellees in the district court, we sustain issues one and two. Given our disposition of those issues, it is not necessary that we address the remaining issues advanced by Black on appeal. We reverse the district court's orders granting summary judgment and remand the case for trial.

Justice GRAY concurring.

TOM GRAY, Justice, concurring.

This case is being reversed and remanded. With that I agree. But the only issue which we needed to decide to reach that result is the question of whether Haddad is the agent for Delta. Black presented some evidence that Haddad is the agent of Delta. Accordingly the motions for summary judgment of Delta and Perez must be reversed for a determination of that issue. Haddad's motion must also be reversed because of the same issue and for the additional reason that Black introduced some evidence from which it could be inferred that Haddad was the owner of the unincorporated travel agency at the time that Black purchased the tickets.

Once the issue of agency is determined on remand, many of the other issues purportedly decided in this opinion will be advisory opinions because they will no longer be necessary to a disposition of this case. The answer to the agency question will control the causes of action that Black

er, 814 S.W.2d 867, 870 (Tex.App.-Austin 1991, no writ).

can assert and against whom, the nature of the damages that can be recovered (tort versus contract[1]—general versus special[2]), what evidence can be considered against which defendants, and a multitude of other "ripple effects" in the manner in which some of the issues presented in this appeal should ultimately be decided.

The majority gets trapped into attempting to resolve many of these issues prematurely because this is a very complex area of the law and the parties have failed to appreciate the conflicts in the various arguments they have made in their briefs. This problem is compounded because the briefs of the parties have failed to clearly present what allegations were made in the alternative and the consequences of "proving" one alternative or the other. On these briefs, and because on remand there may be additional factual development that would assist us, I would not attempt to decide whether Black's claims for intentional misrepresentation (fraud) and negligent misrepresentation are preempted by the Airline Deregulation Act.

Finally, because I believe any decision regarding the preemption issue to be premature, I express only my reservations about the majority's conclusion that the torts of fraud and negligent misrepresentation are more similar to breach of contract claims than they are to consumer protection statutes and therefore are not covered by the Airline Deregulation Act's preemption of efforts by the various states to regulate the airline industry.

1. *See Weber v. Domel,* 48 S.W.3d 435 (Tex. App.-Waco 2001, no pet. h.).

2. *See Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502, 1854 WL 7208 (1854).

With these comments, I concur in the judgment.