

NUMBER 13-12-00704-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DONALD L. WILLIAMS,
ARONELL G. WILLIAMS, AND
A-TOUCH HOME HEALTH CARE, LTD.,                                    Appellants,

v.

COMPASS BANK,                                                          Appellee.

On appeal from the 430th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justices Valdez and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

By one issue, appellants Donald L. Williams, Aronell G. Williams, and A-Touch

Home Health Care, Ltd. (collectively "the Williams parties") appeal from the trial court's

granting of appellee, Compass Bank's ("the Bank"), traditional motion for summary

judgment.    We affirm.

## I.    BACKGROUND[1]

The underlying dispute in this case involves the foreclosure of five parcels of land in Hidalgo County by the Bank against the Williams parties.   In October 2010, the Williams parties filed an original petition and request for injunctive relief against the Bank alleging wrongful foreclosure of five parcels of land.   The Bank filed its answer and asserted a counterclaim against the Williams parties alleging that the Bank made several loans to the Williams parties as evidenced by promissory notes.   The Bank alleged further that the subject promissory notes were in default, and it sought to recover the unpaid balance due on the notes, together with interest and attorneys' fees.   In April 2011, the trial court signed an order granting the Williams parties' motion to dismiss their claims against the Bank with prejudice following a foreclosure forbearance and settlement agreement reached between the parties (the Agreement).

Pursuant to the Agreement, the Williams parties acknowledged that default had occurred on the various promissory notes between the Williams parties and the Bank, and that an indebtedness totaling $2,682,657.88 was due at that time and remained unpaid.   The Williams parties agreed to pay the total indebtedness to the Bank by the final remedy date of June 7, 2011, in exchange for the Bank non-suiting its counterclaim(s) against the Williams parties and releasing all liens and security interest in the subject collateral.

---

[1] On March 28, 2013, this Court issued a memorandum opinion and judgment in this cause number dismissing the case for want of prosecution.   Subsequently, the Williams parties filed a motion for rehearing and to reinstate the appeal, which we granted.   On April 25, 2013, we vacated our memorandum opinion and judgment issued on March 28, 2013.   We issue this memorandum opinion and accompanying judgment today in their place.

On July 9, 2012, the Bank filed a traditional motion for summary judgment in support of its counterclaim for suit on a note and alleged that the Williams parties had failed to comply with the terms of the Agreement and pay the Bank the amount agreed upon by the parties. In its motion, the Bank asserted that the Williams parties owed $2,754,992.29 with an aggregate interest per diem of $513.01. The Bank also sought attorney's fees and costs as detailed in the respective promissory notes.

The Williams parties subsequently filed their answer to the Bank's counterclaim, asserted a general denial, and pleaded the affirmative defense of failure to mitigate damages. The Williams parties also filed a response to the Bank's motion for summary judgment and argued that the Bank failed to mitigate its damages because the Williams parties found a buyer to purchase one or more of the subject parcels of land for sale "for approximately $1,400,000.00." To support this argument, the Williams parties attached an affidavit from Donald L. Williams that stated the following:

> A buyer was found. The buyer was willing to pay us approximately $1,400,000.00 for the property. [The Bank] refused to give its permission to the sale, even though the sale would have paid off the balance due on the debt to [the Bank] for [the Williams parties].
>
> I have never understood why [the Bank] would not give permission for me to sell the property for $1,400,000.00. If that sale had been allowed to go through, [the Bank] would have been paid in full. There was no good reason to deny the sale.

The Bank filed a reply, in which it argued that the Williams parties acknowledge in the Agreement that the total amount owed on the loans at the time of the agreement was $2,682,657.88, which is an amount more than what would have been realized if the sale had gone through for $1,400,000.00, according to Donald L. Williams. The Bank attached further evidence, which showed that it had foreclosed on the subject properties

3

in June 2012 and sold three parcels for the respective amounts of $1,449,000.00, $515,200.00, and $561,200.00. Based upon these sales, the Bank recalculated the Williams parties' indebtedness at $263,106.12, with an interest per diem rate of $105.87, excluding post-judgment interest, attorney's fees, and costs.[2]

After a hearing on the motion, the trial court granted summary judgment in the Bank's favor and ordered the Williams parties to pay $269,564.19 with a per diem interest rate of $105.87 starting from October 8, 2012. The trial court further ordered the Williams parties to pay reasonable and necessary attorney's fees of $39,664.67, with post-judgment interest and costs of court. This appeal followed.

## II. ANALYSIS

By one issue, the Williams parties assert that the trial court erred in granting the Bank's traditional motion for summary judgment.

### A. Standard of Review

A traditional summary judgment is proper when the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or when the defendant has conclusively established all elements of its affirmative defense. *Scripps Texas Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 834 (Tex. App.—Corpus Christi 2003, pet. denied) (quoting *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)).

---

[2] According to the Bank, this figure was revised as of October 8, 2012 to $269,564.19 with interest per diem of $105.87.

4

We review a trial court's ruling of a traditional motion for summary judgment de novo. *Belalcazar*, 99 S.W.3d at 834. In our review, we follow these well-established rules: (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *Grinnell*, 951 S.W.2d at 425.

## B.    Discussion

The Bank's underlying action involves the enforcement of the various notes in this case and recovery of the unpaid balance owed by the Williams parties. According to the record, the following facts are undisputed:   the Williams parties were indebted to the Bank pursuant to seven promissory notes and were in default under the terms of the promissory notes. In October 2010, the Williams parties filed an original petition and request for injunctive relief against the Bank alleging wrongful foreclosure of the five parcels of land. Shortly thereafter, the Bank filed a counterclaim against the Williams parties seeking enforcement and collection on the defaulted notes. On February 22, 2011, the Williams parties and the Bank entered an agreement to "suspend . . . [the Bank's] collection efforts against the collateral pursuant to the [notes]." Under the agreement, the Williams parties agreed to dismiss with prejudice its causes of action against the Bank and pay the Bank the total indebtedness by June 7, 2011 in exchange for the Bank's forbearance on its collection efforts related to the notes. In April 2011, the trial court signed an order granting the Williams parties' motion to dismiss their

5

claims against the Bank with prejudice following a foreclosure forbearance and settlement agreement reached between the parties. The Williams parties failed to make payment by June 7, 2011.

First, the Williams parties argue that the Bank was not entitled to summary judgment based upon the Williams parties' affirmative defense that the Bank failed to mitigate its damages by refusing to sell the property to a buyer that the Williams parties had found. We disagree. The doctrine of mitigation of damages prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff. *Great Am. Ins. Co. v. N. Austin Mun. Utility Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995). In other words, where a party is entitled to the benefits of a contract and can save himself from the damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions. *Id.* (quoting *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936)). Although an injured party is required to exercise reasonable efforts to minimize damages, it is not required to mitigate its losses "by accepting an arrangement with the repudiator if that is made conditional on [its] surrender of [its] rights under the repudiated contract." *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 135 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) (quoting *Publicker Chemical Corp. v. Belcher Oil Co.*, 792 F.2d 482, 488 (5th Cir. 1986)).

Here, the Williams parties, as the breaching parties, had the burden of proving that damages could have been mitigated. *See Copenhaver v. Berryman*, 602 S.W.2d 540, 544 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.). The Williams parties base their failure to mitigate affirmative defense on testimony from Donald Williams, who

6

found a buyer who was willing to pay "approximately $1,400,000" for one of the parcels at issue, but the Bank refused to give Williams its permission for the sale. If the Bank accepted this side arrangement with the Williams parties, it would have required the Bank to surrender its rights and remedies under the promissory notes, as well as the Agreement with regard to this particular parcel. Because the notes were in default, and the Williams parties failed to pay their indebtedness by June 7, 2011, the Bank was not required to mitigate its damages by forgoing its rights and remedies under the notes and the Agreement. *See Cook Composites*, 15 S.W.3d at 135. Without other evidence that damages could have been mitigated, the Williams parties failed to raise a question of fact on the Bank's failure to mitigate.[3]

The Williams parties next argue that a question of fact remained as to the outstanding balance owed to the Bank. We, again, disagree. To recover a debt due and owing under a promissory note, a party must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing. *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

At the time the Agreement was entered into, the parties agreed that the total indebtedness owed to the Bank by the Williams parties on the seven promissory notes was $2,682,657.99, with an aggregate interest per diem of $513.01. After calculating the agreed interest per diems, the debt totaled $2,743,706.07 on June 6, 2011. The Bank submitted an affidavit from one of its senior vice presidents, Frank Hastings, who

---

[3] We also note that the Bank had a right under the promissory notes to foreclose on the properties prior to the Agreement reached in 2011 because the Williams parties were in default. The Agreement, by itself, is further conclusive proof of the Bank's attempt to exercise reasonable efforts to minimize damages by forbearing its collection efforts and allowing the Williams parties to pay back its indebtedness.

7

testified that after a foreclosure sale on June 7, 2012, the Bank credited the Williams parties with $2,525,400.00 against the total debt, which left a deficiency amount of $217,793.06, with an interest per diem of $105.87. The deficiency amount increased to $269,564.19, with an interest per diem of $105.87 at the time of the summary judgment hearing. The Williams parties argue, however, that the bid sheets submitted by the Bank show an outstanding balance of $91,287.97, by using the figures listed under the "anticipated deficiency remaining" line of the bid sheets. Such an argument, however, is a mischaracterization of what the evidence actually shows. The bid sheets show bid prices related to foreclosed land, which when added together, totaled $2,525,400.00. This figure supports the Hastings affidavit, and the credit given to the Williams parties. After applying the credit of the foreclosures to the total indebtedness, the deficiency amount equaled $217,793.06, which increased to $269,564.19 with a per diem interest rate of $105.87 shortly before the summary judgment hearing. Without more, the Williams parties did not raise a genuine issue of material fact regarding the outstanding balance owed.

Therefore, after our de novo review, we conclude that the Bank established as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. The Williams parties' sole issue on appeal is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
16th day of January, 2014.