**Reversed and Remanded and Memorandum Opinion filed June 26, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01054-CV

### REPUBLIC SERVICES, INC., Appellant

### V.

### MARTHA E. RODRIGUEZ AND CUSTOM COPYING SOLUTIONS, L.P. D/B/A CORNERSTONE REPORTING, Appellees

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2011-49315**

## M E M O R A N D U M   O P I N I O N

Appellant Republic Services, Inc. appeals the trial court's order granting appellees' motion for partial summary judgment and dismissing Republic's remaining claims. In its first issue, Republic contends summary judgment for its former employee, appellee Martha Rodriguez, was improper for various reasons, including: (1) the covenant not to compete that it alleges she breached is not unenforceable as a matter of law because it imposed reasonable restraints that were

ancillary to or otherwise part of an enforceable agreement; and (2) even if the trial court determined the covenant imposed unreasonable restraints, it should have reformed the covenant rather than invalidated it. Republic contends in its second issue that summary judgment for Rodriguez's new employer, appellee Custom Copying Solutions, L.P. d/b/a Cornerstone Reporting (Cornerstone), was likewise improper because it was based solely on the unenforceability of the covenant.

We hold appellees did not prove as a matter of law that the entire covenant was unenforceable, and therefore appellees were not entitled to summary judgment on Republic's claims. We reverse the trial court's judgment and remand for further proceedings.

## BACKGROUND

Republic Services, Inc. is a Texas corporation that provides court reporting services, process services, and record retrieval services for law firms, insurance companies, and corporate legal departments. Martha E. Rodriguez signed an employment agreement with Republic in 2007 that listed her position as "Manager/Marketing Director." According to the agreement, the position's duties included making calls to existing and prospective customers, assisting in the pricing of jobs, interfacing with production employees to assure timely completion of jobs, and assisting other employees in providing the highest level of customer service. The employment agreement also included non-competition, non-solicitation, and non-disclosure clauses "in consideration for [Republic's] disclosure of confidential and trade secret information" to Rodriguez. Republic agreed "to disclose to [Rodriguez] confidential and trade secret information concerning its customers or client relationships, business plans, and business information." The non-competition clause includes the following language:

2

For a period of twelve (12) months after termination of her employment under and pursuant to this Agreement, whether with or without cause, the Employee will not, (i) make known to any person, firm, or corporation the names and addresses of any of the customers of the Company or any other information pertaining to such customers, or (ii) approach, contact, cause to be contacted, or communicate with any customer or account, for whom Company performed services at any office where Employee performed any duties during the two years immediately preceding Employee's termination of employment with Company.

\* \* \*

For a period of twelve (12) months after termination of her employment, under and pursuant to this Agreement, whether with or without cause, the Employee will not, (i) solicit, divert, or accept orders for record retrieval, court reporting, and other related services for or on behalf of any individual or firm, from any customer for whom Company performed services at any office where Employee performed any duties for two years immediately preceding Employee's termination of employment with Company or (ii) own any interest in, be an employee of, be an officer or director of, be a consultant to, or be associated in any way with a competitor of the Company within the county, or counties, where Employee worked while employed hereunder. . . . [S]hould the work place of Employee be changed or expanded, the county or counties set forth above, shall be the county or counties where Employee was employed during the last eighteen months immediately prior to termination of employment.

Rodriguez worked for Republic for nearly six years, during which she assigned and scheduled outside court reporters and videographers to meet the needs of Republic's clients. Republic trained Rodriguez to use the "RB8" software system for scheduling the services and sending invoices. The training consisted of reading a binder of materials and attending webinars. Rodriguez would also invite her personal contacts to lunch with her and her boss at Republic; these contacts included friends who were responsible for setting depositions for the law firms where they worked.

3

After Rodriguez quit her job at Republic, Cornerstone hired her. At Cornerstone, Rodriguez calls and schedules court reporters, videographers, and interpreters for Cornerstone's customer base. Rodriguez claimed Cornerstone "had everything up and running" by the time she began working there, but according to Keith Morgan, a former employee of Cornerstone, Rodriguez was "responsible for creating the infrastructure that enabled Cornerstone's court reporting division to begin operations," including setting up Cornerstone's "RB8" software system and locating court reporters to perform services.

Republic field suit against both Rodriguez and Cornerstone. Republic alleged that Rodriguez breached her employment agreement's non-competition clause by:

- "taking a position for Cornerstone, a competitor of Republic's in Harris County"

- "assisting Cornerstone in contacting Republic's customers"; and

- "seeking to poach court reporting business therefrom."[1]

Republic alleged that Cornerstone tortiously interfered with the employment agreement by hiring Rodriguez and contacting Republic's customers in order to divert court reporting business. Republic also alleged that both Cornerstone and Rodriguez had tortiously interfered with its prospective business relationships, that Cornerstone was vicariously liable for Rodriguez's breach of contract, and that Cornerstone and Rodriguez were engaged in a civil conspiracy.

---

[1] We refer to the allegations of Plaintiff's Second Amended Petition, filed July 26, 2012, rather than Plaintiff's Third Amended Petition, filed August 24, 2012, because the trial court's August 24 order granting summary judgment does not refer to the Third Amended Petition, grant leave to file the Third Amend Petition within seven days of the summary judgment hearing, or give other indication that the court considered the Third Amended Petition. Tex. R. Civ. P. 63; *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 491 n. 1 (Tex. 1988); *see also Espeche v. Ritzell*, 65 S.W.3d 226, 330 (Tex. App.—Houston [14th Dist.] 2001), *rev'd on other grounds*, 87 S.W.3d 536 (Tex. 2002).

4

Appellees Cornerstone and Rodriguez filed a traditional motion for partial summary judgment on the enforceability of the covenant not to compete and on Republic's claims against Cornerstone. Appellees argued Republic's claim for tortious interference was dependent on proof that Cornerstone tortiously interfered with Rodriguez's employment agreement, which in turn required proof that the non-compete clause was valid and enforceable. According to appellees, however, the non-compete clause was unenforceable as a matter of law because it (1) "contains an unreasonable industry-wide exclusion, which impose[s] greater restraints than necessary to protect the business interests and goodwill of [Republic]," and (2) is not ancillary to or part of an otherwise enforceable agreement at the time the agreement was made. The motion asked the trial court to dismiss Republic's claims against Cornerstone for tortious interference with contract and with prospective business relationships, and reform the non-compete agreement as the court deemed reasonable and appropriate.

The trial court signed an order granting the motion for partial summary judgment on August 24, 2012. The order held the covenant not to compete unenforceable and dismissed with prejudice Republic's breach of contract claim against Rodriguez and its claims against Cornerstone for tortious interference with contract and with prospective business relations. The order also states that all other relief is denied, that it disposes of all remaining claims in the suit, and that it is a final appealable order.[2]

---

[2] The order therefore additionally disposes of Republic's claims that Rodriguez tortiously interfered with prospective business relations, that Cornerstone is vicariously liable for Rodriguez's breach of contract, and that Rodriguez and Cornerstone engaged in a civil conspiracy against Republic. Republic has not raised an issue on appeal complaining that the court dismissed these claims, as well as Republic's breach of contract claim against Rodriguez, even though appellees' motion did not seek that relief. Instead, Republic attacks each of the summary judgment grounds advanced by appellees and contends that the trial court's summary judgment for Rodriguez and Cornerstone should be reversed in its entirety. As explained below,

5

In two issues, Republic contends the trial court erred in dismissing its claims because the covenant at issue was enforceable. We conclude that appellees did not conclusively show the covenant was unenforceable in its entirety. Because appellees' summary judgment grounds were premised on the covenant's unenforceability, we reverse the summary judgment in their favor.

## I.     Standard and scope of review

We review a trial court's grant of summary judgment de novo. *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Viewing the evidence in the light most favorable to the non-movant, we indulge every reasonable inference and resolve any reasonable doubts in the non-movant's favor. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Ron v. AirTran Airways, Inc.*, 397 S.W.3d 785, 788 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A defendant who conclusively negates an essential element of a plaintiff's claim is entitled to summary judgment on that claim. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Evidence is considered conclusive if reasonable people could not differ in in their conclusions. *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

In reviewing a motion for summary judgment, "we will only consider the

---

we agree.

record and summary judgment proof available to the trial court on the date of submission." *McAllister v. Samuels*, 857 S.W.2d 768, 775 (Tex. App.—Houston [14th Dist.] 1993, no writ). Therefore, we must first resolve Republic's motion to strike, which challenges the scope of the summary judgment record.

Republic moved to strike a supplemental clerk's record requested by appellees, or alternatively asked this Court not to consider the material in the record. The basis of Republic's motion is that the supplemental clerk's record is not relevant because it is comprised entirely of material that was either not before the trial court on summary judgment or not relied upon in support of the summary judgment. Although appellees urge that it is improper to reject a supplemental record as irrelevant under Texas Rule of Appellate Procedure 34.5(c), appellees provide no authority to support the notion that this Court may consider materials not before the trial court when reviewing its summary judgment order. *Cf. Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (observing that under Tex. R. App. P. 34.5(c), including items in a supplemental clerk's record does not "compel[] the appellate court to consider those items in reaching its decision" or render them "relevant for our decision on the merits of a case"). When reviewing a summary judgment order, we do not consider the summary judgment record as it could have been; we consider it as it was at the time the trial court made the summary judgment ruling. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 411 (Tex. 1998). We turn, therefore, to the supplemental clerk's record to determine whether its contents were before the trial court at the time of the ruling.

First, the supplemental record contains excerpts from the depositions of Martha E. Rodriguez and Chad Daniel. Counsel for appellees filed these excerpts with the trial court on March 18, 2013, as attachments to a letter to the clerk

7

requesting supplementation of the clerk's record on appeal. As outlined above, the trial court signed its order on partial summary judgment on August 24, 2012. Because the deposition excerpts were not before the trial court at the time of its summary judgment ruling, we will not consider them.

Second, the remainder of the supplemental record consists of documents relating to a motion, response, and order to compel production of certain confidential information that Republic provided Rodriguez. Although these materials were on file at the time of the summary judgment proceedings, appellees offer nothing to suggest that either party included these materials as summary judgment evidence or gave notice of intent to rely upon them as summary judgment evidence. We therefore conclude that these materials were likewise not part of the summary judgment record at the time of the summary judgment ruling, and we will not consider these materials. Republic's alternative motion asking this Court not to consider the material in the supplemental clerk's record is granted.

## II. Appellees have not shown as a matter of law that the covenant not to compete was unenforceable.

Appellees sought summary judgment "on the non-competition covenant at the heart of Plaintiff's claims," alleging the covenant is unenforceable because it is an industry-wide prohibition that is not ancillary to or part of an otherwise enforceable agreement. Whether a covenant not to compete is enforceable, including the reasonableness of the covenant, is a question of law. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 643 (Tex. 1994). A covenant not to compete is enforceable if it is (1) "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," and (2) "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or

other business interest of the promisee." Tex. Bus. & Com. Code Ann. 15.50(a) (West 2011).

Republic's first issue attacks the trial court's summary judgment holding the covenant unenforceable, which was proper if appellees proved conclusively that one of these requirements was not met here. We consider each requirement in turn.

**A.  Appellees failed to show conclusively that the non-competition clause was not ancillary to or part of an otherwise enforceable agreement.**

Under the first requirement, we must determine (1) whether an otherwise enforceable agreement between the parties exists, and if so, (2) whether the covenant is ancillary to or part of that agreement. *Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011); *Mann Frankfort*, 289 S.W.3d at 849. An "otherwise enforceable agreement" is one supported by sufficient consideration, not illusory promises. *See Light*, 883 S.W.2d at 645–46. A covenant that is "ancillary to or part of" the otherwise enforceable agreement is one that "give[s] rise to the employer's interest in restraining the employee from competing" and is "designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Mann Frankfort*, 289 S.W.3d at 849.

Section 15.50 "does not ground the enforceability of a covenant not to compete" on "overly technical disputes . . . over whether a covenant is ancillary to an otherwise enforceable agreement," however. *Alex Sheshunoff Mgmt. Services, L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006). Rather, "[c]onsideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus . . . ." *Marsh USA*, 354 S.W.3d at 775. Technical disputes "such as the amount of

9

information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received" are concerns that are "better addressed in determining whether and to what extent a restraint on competition is justified." *Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 655–56.

Appellees contend no "otherwise enforceable agreement" existed between the parties because Republic failed to provide adequate consideration to make the non-compete enforceable. Cornerstone bases this assertion on Republic's promise in the employment agreement "to disclose to [Rodriguez] confidential and trade secret information concerning its customers or client relationships, business plans, and business information," which appellees contend Republic never performed. According to appellees, any confidential information to which Rodriguez had access while working for Republic did not exist until after she signed the non-compete agreement. But "[t]here is no requirement under Texas law that the employee receive consideration for the noncompete agreement prior to the time the employer's interest in protecting its goodwill arises." *Marsh USA*, 354 S.W.3d at 778; *see also Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 655 ("[A] covenant not to compete is not unenforceable under the Covenants Not to Compete Act solely because the employer's promise is executory when made.").

Appellees further contend that because Rodriguez compiled the confidential information herself, primarily from publicly available websites, Republic never provided her with any client data or lists. Yet even if the compiled information were publicly available, which Republic disputes, "the non-competition agreement is not invalid merely because the information gained at appellant's expense was generally available to the public rather than a 'trade secret.'" *Unitel Corp. v. Decker*, 731 S.W.2d 636, 640 (Tex. App.—Houston [14th Dist.] 2010, no writ).

10

Rodriguez testified that Republic paid for and provided training on "RB8" software,[3] and that she was given access to Republic's prior invoices, which enabled her to see how many depositions a particular law firm had ordered through Republic in a given year. Courts have recognized that training and customer information can provide consideration. *See DeSantis v. Wackenhunt Corp.*, 793 S.W.2d 670, 681 n.6 (Tex. 1990) ("Consideration may include special training or knowledge afforded the promisor . . . ."); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Customer lists, pricing information, client information, customer preferences, buyer contacts . . . have all been recognized as trade secrets.").

Furthermore, although Rodriguez claimed she did not have access to Republic's financial information, she testified regarding "standard pricing" that made it possible to "mak[e] a little bit of money" by continuing to do business with a videographer with whom she had worked prior to her employment at Republic. And based on an email Rodriguez sent her boss at Republic—which lists amounts for "total" and "citation," and which Republic contends is evidence that Rodriguez compiled financial information for shareholders—we can reasonably infer Rodriguez had access to and some awareness of Republic's pricing practices and financial performance. At most, appellees have challenged the "true degree of confidentiality" of the received information, a technical dispute "better addressed in determining whether and to what extent a restraint on competition is justified." *Alex Sheshunoff Mgmt. Servs., L.P.*, 209 S.W.3d at 655–56.

Appellees' claims of inadequate supporting consideration also fail because

---

[3] Appellees contend on appeal that because the manufacturer created the binders and associated free webinars for its commercially available software, the "RB8" training is not sufficiently unique to constitute consideration for a non-compete clause. We need not resolve this issue, which was not presented in the trial court, in light of other available evidence that Republic provided some confidential information to Rodriguez.

there was evidence Republic provided Rodriguez with access to its business goodwill, a protectable interest. *See Marsh USA*, 345 S.W.3d at 774 ("[W]e have recognized on multiple occasions that goodwill, along with trade secrets and other confidential or proprietary information, is a protectable business interest . . . ."); *Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 657 ("With Johnson's help, as Director of Affiliation, ASM continued to develop clients for four years after the employment agreement was signed. Johnson helped develop ASM's goodwill and could have tried to capitalize on it unfairly after going to Strunk."). Evidence suggested that Rodriguez, at the direction of her boss at Republic, invited contacts who had authority to schedule court reporters for their firms to lunches paid for by her boss. There was also evidence that at least one of Rodriguez's contacts with this authority chose to begin scheduling court reporters through Cornerstone upon hearing Rodriguez had changed employers. *Compare DeSantis*, 793 S.W.2d at 683 ("Assuming, however, that DeSantis did develop business goodwill for Wackenhut, there is no showing that he did or even could divert that goodwill to himself for his own benefit after leaving Wackenhut.").

Given this evidence, we hold appellees have failed to prove as a matter of law that the consideration for the non-competition clause—including Republic's business goodwill, customer order history, and the provided "RB8" training—was not "reasonably related to an interest worthy of protection." *See Marsh USA*, 354 S.W.3d at 775. As such, appellees were not entitled to summary judgment on the ground that the covenant was not ancillary to or part of an otherwise enforceable agreement.

## B. Appellees have not proven as a matter of law that all restraints in the non-competition agreement were unreasonable.

Turning to the second requirement, appellees' partial summary judgment

12

motion argued in the alternative that the covenant was an illegal restraint on trade because it imposed greater restraint than necessary to protect Republic's business interests. We hold appellees failed to show as a matter of law that the non-competition agreement Rodriguez allegedly breached was unenforceable.

Section 15.50 provides that a covenant not to compete is enforceable "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50. The "basic standards for enforcement are the same under [section 15.50] as under the common law." *Mann Frankfort*, 289 S.W.3d 854–55. In order to be reasonable, the restrictive covenant "must bear some relation to the activities of the employee." *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991). "A covenant is unreasonable if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Zep. Mfg. Co. v. Harthcok*, 824 S.W.2d 654, 660 (Tex. App.—Dallas 1992, no writ). Industry-wide exclusions are therefore unreasonable. *John R. Ray & Sons v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Haass*, 818 S.W.2d at 386–88).

Appellees advanced a single argument in the trial court concerning the scope of the covenant at issue: it contains an unlawful industry-wide exclusion because it forbids association with any company that could be seen as a competitor of Republic. Appellees did not present any ground for summary judgment arising from Rodriguez's promises not to (a) "make known to any person, firm, or corporation the names and addresses of any of the customers of the Company or any other information pertaining to such customers," (b) "approach, contact, cause

13

to be contacted, or communicate with any customer or account, for whom Company performed services at any office where Employee performed any duties during the two years immediately preceding Employee's termination of employment with Company," or (c) "solicit, divert, or accept orders for record retrieval, court reporting, and other related services for or on behalf of any individual or firm, from any customer for whom Company performed services at any office where Employee performed any duties" for those same two years. Republic's allegation that Rodriguez assisted Cornerstone in contacting Republic's customers and seeking to "poach" their business, if true, would violate these promises within Rodriguez's covenant not to compete—promises that were unchallenged by the summary judgment.

Appellees contend on appeal that these promises cannot be enforced because they "purportedly extend[] well beyond just those clients that Rodriguez had contact with while employed at Republic." *Cf. Haass*, 818 S.W.2d at 387 ("[I]nhibiting departing employees from engaging services for clients . . . with whom the employee had no contact while associated with the firm does not further and is not reasonably necessary to protect [the firm's goodwill.]"). Appellees did not make this overbreadth argument in their motion for summary judgment, however. *See* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) ("A motion must stand or fall on the grounds expressly presented in the motion."). We therefore do not consider it on appeal.[4]

---

[4] We also note that appellees did not present any evidence Republic performed services for any customers with whom Rodriguez had no contact. *Cf. EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 660 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] prohibition against contacting existing customers does not necessarily equate to a prohibition against contacting customers with whom the former employee had no dealings."); *id.* ("Determining whether the non-compete covenant is a reasonable restraint depends on the circumstances surrounding

14

Assuming, without deciding, that these unchallenged portions of the covenant are severable, we turn to appellees' industry-wide challenge.[5] Appellees' motion for partial summary judgment contended the covenant contained an unenforceable industry-wide exclusion for subsequent employment. Relying on the language of the second subclause (ii) of the covenant, quoted above, appellees argued that the non-compete agreement "attempts to restrain Rodriguez from working or being 'associated in any way' with a competitor of Republic within the county or counties, where Rodriguez worked while employed [at Republic,]" and that "[t]his limitation purportedly excludes Rodriguez from working, *in any capacity at all*, in the legal support services industry as well as any other company, (e.g. Kinkos), that could be seen as a 'competitor' of Republic."

Appellees argument in the trial court rested entirely upon our decision *John R. Ray & Sons v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Haass*, 818 S.W.2d at 386–88). In *Stroman*, we examined a covenant not to "engage in or have an interest in any business that sold insurance policies or engaged in the insurance agency business within Harris County and all adjacent counties for a period of five years from the date of the Agreement" or "solicit or accept, or assist or be employed by any other party in soliciting or accepting, insurance business from any of Ray & Sons' accounts." Because Stroman was an insurance agent and the covenant prevented him from working in the insurance industry, we held the covenant was an unenforceable,

execution of the contract; the universe of customers covered by the non-compete covenant; and whether [employee] had dealings with all of the customers in that universe, or only some of them."). Thus, even were we to consider this issue, appellees could not conclusively establish overbreadth merely by reciting the language of the agreement.

[5] The parties do not address the severability question. *Cf. In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008); *Zep. Mfg. Co.*, 824 S.W.2d at 662 ("The promises not to compete and not to disclose are separable and the unenforceability of the noncompete covenant does not render void the nondisclosure covenant.").

industry-wide prohibition.

Appellees' attempted analogy to *Stroman* fails. Appellees argue without evidence that the competitor-of-Republic scope is tantamount to an industry-wide prohibition. But appellees offered no evidence about the industry at issue. By contrast, Republic brought summary judgment evidence regarding companies in Harris County that it contended were non-competitors within the "legal services" or "legal support services" industry. Republic's summary judgment evidence identified such companies by name and service provided. On this record, we cannot determine as a matter of law that the covenant imposed an unreasonable industry-wide exclusion. We therefore conclude that the trial court erred in holding the covenant unenforceable.

## III. The trial court erred in dismissing Republic's claims.

Appellees' motion for partial summary judgment was premised solely on the unenforceability of Rodriguez's covenant not to compete. Having concluded that appellees failed to prove as a matter of law that the covenant is not enforceable, we hold the trial erred in dismissing Republic's claims.

As an initial matter, because appellees failed to present the trial court with valid grounds for holding the covenant unreasonable in its entirety, appellees have not shown as a matter of law that there was no contract that Rodriguez could breach or with which Cornerstone could interfere. *See Ron*, 397 S.W.3d at 788; *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (holding recovery for tortious interference with prospective business relationship requires proof defendant's conduct was independently tortious or wrongful); *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 664 (Tex. 1990) (listing elements of tortious interference with contract).

Furthermore, section 15.51 requires reformation of the covenant "to the

16

extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable." Thus, even if the second subclause (ii) of the covenant were an unenforceable industry-wide exclusion, section 15.51 required the trial court to reform that subclause "to impose a restraint that is not greater than necessary to protect [Republic's] goodwill or other business interest." Tex. Bus. & Com. Code § 15.51(c) (West 2011).[6]

For these reasons, we sustain Republic's first and second issues and hold that the trial court erred by granting summary judgment for Rodriguez and Cornerstone.

## CONCLUSION

Having sustained Republic's issues, we reverse the trial court's summary judgment dismissing Republic's claims against Rodriguez and Cornerstone and remand for further proceedings.


/s/     J. Brett Busby
        Justice

Panel consists of Justices McCally, Busby, and Simmons.[7]

---

[6] The parties' summary judgment filings and appellate briefs do not discuss how any reformation of the covenant by the trial court would affect Republic's claims for damages and injunctive relief. Accordingly, we do not address that issue. We simply point out that in light of the statutory command of reformation, proving the second subclause (ii) unenforceable as written is an insufficient ground—standing alone—to support summary judgment.

[7] Former Justice Rebecca Simmons sitting by assignment.